# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE<br><br>**PINNACLE MULTI-ACQUISITIONS HOLDINGS, LLC**,<br><br>DEBTOR. | CASE NO. 22-BK-02669<br>CHAPTER 13<br>HON. LASHONDA A. HUNT<br><br>HEARING DATE: MAY 26, 2022<br>HEARING TIME: 11:00 A.M. |

## CITY OF CHICAGO'S OBJECTION TO THE APPLICATION TO EMPLOY J. KEVIN BENJAMIN EFFECTIVE MARCH 8, 2022

1. Section 327(a) prohibits Benjamin's employment. He represents an interest adverse to this estate and is not disinterested. Benjamin was retained by Gregory Perkins, the controlling manager of the Debtor here, and Tavern on LaGrange Corp ("*Tavern*"), to represent those entities in bankruptcy. Tavern paid Benjamin's retainer not only for its own case, but also for the Debtor in this case. Tavern's payment to Benjamin to handle this case is an avoidable gift that Tavern's estate is entitled to recover (from either Benjamin or possibly this estate). Thus, there is a very real and actual conflict between the Debtor here and Tavern. And worse still, Benjamin created the conflict and is a party to it (being the initial transferee of the funds), on top of being the attorney on both sides.

2. In addition, Perkins has personally guaranteed the fees in both cases. The personal guarantee of fees in both cases adds yet another layer of conflict. Perkins has an incentive to ensure that the entities pay the fees so that he does no have to, without regard to which one pays the fees and for whom. This problem has already

manifested — Tavern paid the retainer for the Debtor here and the stated reason for that is because Tavern owes Perkins for all his great work (without any mention of why this would require Tavern to pay for the *Debtor's* attorney). And it appears Benjamin is doing nothing to ensure that he is serving in the best interest of the respective entities, as opposed to Perkins personally.

3. Benjamin's retention application must be denied.

## I. FACTS

4. Pinnacle Multi Acquisitions Holdings LLC (the "*Debtor*") filed this case on March 8, 2022. *See* Dkt. No. 1.

5. Gregory Perkins ("*Perkins*"), the manager of the Debtor, executed the bankruptcy documents on its behalf. Tiffany Perkins ("*Tiffany*"), who is Gregory's wife, and Shayla Butler are the asserted owner of the Debtor. Tiffany filed her own bankruptcy in 2016 under the name Tiffany J. Powe, Case No. 16-bk-16593. An adversary proceeding was filed in that case asserting that Perkins and Tiffany were misusing corporate funds. *See* Case No. 16-ap-530.

6. The Debtor owns a 77-unit apartment building at 7456 S. South Shore Drive in Chicago, IL (the "*Chicago Building*").

7. There are significant building code issues with the Chicago Building. The City of Chicago (the "*City*") has intuited several suits against the Debtor and obtained orders requiring the Debtor to remedy issues.

8. The City has an enforcement suit currently pending in the Circuit Court of Cook County, Case No. 21-M1-1401461.

2

9. The building is currently in a dangerous condition. A City building inspector has cautioned that the building's façade could collapse if not addressed immediately.

10. The City is one of the Debtor's largest unsecured creditors due to a multitude of fines and penalties for building code violations and violations of multiple court orders. The Debtor also owes the City over $100,000 for water and sewer service.

11. Prior to filing this case, J. Kevin Benjamin ("*Benjamin*") received a $15,000 retainer and the filing fee, for a total of $16,738, from a company named Tavern on LaGrange, Corp, *i.e.*, Tavern. *See* Dkt. No. 14, p. 5 of 12.

12. The primary secured creditor in this case, BLC Prime Lending Fund II, LLC, has obtained an order prohibiting the use of cash collateral in this case. *See* Dkt. No. 24. The lender also obtained an order excusing the requirements of 11 U.S.C. § 543 and granting authority to have its receiver appointed by the state court. *See* Dkt. No. 37. Since then, the receiver has been attempting to take control of the Chicago Building and its product and proceeds.

13. On April 26, 2022, Tavern filed its own bankruptcy case under subchapter V of chapter 11. *See* Case No. 22-bk-04773. Benjamin filed that case for Tavern. Perkins, as officer or manager of Tavern, executed the bankruptcy documents to initiate that case.

14. Tavern paid Benjamin an additional $10,000 retainer to handle its own case. Therefore, Benjamin has been paid retainers of $15,000 for the Debtor here, and $10,000 for Tavern. But all the money came from Tavern.

15. The U.S. Trustee filed a motion to remove the debtor from possession in the Tavern case, which was granted on May 13, 2022. *See* Case No. 22-bk-04773, Dkt. Nos. 31, 48. The subchapter V trustee has been put in possession and granted expanded powers under 11 U.S.C. § 1183(b)(5).

16. Therefore, the assets in neither of these cases remain in the possession of the debtors. The state court receiver has the Chicago Building here, and the subchapter V trustee has the assets in Tavern.

17. On May 19, 2022, Benjamin filed his application for employment under 11 U.S.C. § 327(a) seeking to be employed by the estate in this case. *See* Dkt. No. 54. Along with that application, Benjamin filed his own affidavit attesting that he did not represent and interest adverse to the estate and that he was disinterested. *See* Dkt. No. 54-1.

18. Benjamin's affidavit contains a nearly two-page explanation of the relationships between Tavern, the Debtor, Perkins, Tiffany, and other people and entities, much of which Benjamin could not have personal knowledge of and thus could not testify to in his affidavit. *See* Dkt. No. 54-1, pp. 3-5.

19. In that section of the affidavit Benjamin asserts that:

> Tavern on LaGrange Corp felt it was important to help the Debtor [who is not Perkins and who is not owned by Perkins] since Greg Perkins does so much for Tavern on LaGrange Corp without direct compensation and since they desire to payoff the debts of Tavern on LaGrange Corp and need Greg Perkins involvement and also that of Tiffany Perkins who works at Tavern on LaGrange Corp and where the parties ultimately desire to be able to transfer the liquor license to Tavern on LaGrange II and allow Antonio Barnes and Keith Johnson become members of that entity as well. Therefore Tavern on LaGrange Corp paid the retainer and filing fee, not as a loan, and without any expectation of being paid

4

  back because it felt it received more than equivalent value under the circumstances.

*Id.*

  20. Thus, it appears that Tavern paid Benjamin's fees in this case not because it owed anything to the Debtor, or so that it would receive some benefit from the Debtor. Instead, it did so to benefit Perkins and his wife, who manage and benefit from both entities. Therefore, the value Tavern received from the Debtor in exchange is still nothing.

  21. Benjamin also filed a "Declaration of Tavern on LaGrange Corp by Antonio Barnes as Manager of tavern on LaGrange Corp in Support of Application to Employ Counsel." *See* Dkt. No. 54-3. That document provides that "Tavern on LaGrange Corp waives any claim against the Debtor for such advance [retainer to Benjamin]. *See id.* at ¶ 3

  22. Therefore, it appears that Benjamin and the managers of Tavern believe that avoiding fraudulent transfer laws is as easy as executing and second document waiving the right to go after the fraudulent transfer. But of course, that is not true. Avoidable transfer laws are for the benefit of creditors and attorneys for debtors in bankruptcy (as well as debtors that are insolvent) owe a fiduciary duty to the creditors to bring those suits. Thus, debtors clearly cannot waive the right or duty to bring such a suit. It just isn't their right to waive.

## II. ARGUMENT

  23. Pursuant to § 327(a), before attorneys can be employed as general bankruptcy counsel to represent the estate, those attorneys must demonstrate that they "do not

hold or represent an interest adverse to the estate" and that they are "disinterested persons." 11 U.S.C. § 327(a). The requirements of § 327(a) "serve the important policy of ensuring that all professionals appointed [to represent the estate] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (emphasis added).

24. The dual requirements of § 327(a) can be boiled down to what is an "adverse interest." In the Seventh Circuit, an "adverse interest" is "(1) possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) possession of a predisposition under circumstances that render such a bias against the estate." *In re Crivello*, 134 F.3d at 836; *In re Caesars Entm't Operating Co.*, 561 B.R. 420, 431 (Bankr. N.D. Ill. 2015) (Goldgar, J.); *In re Al Gelato Cont'l Desserts*, 99 B.R. 404, 407 (Bankr. N.D. Ill. 1989) (Wedoff, J.); *In re Raymond Prof'l Grp., Inc.*, 421 B.R. 891, 901 (Bankr. N.D. Ill. 2009) (Schmetterer, J.).

### A. The Payment of Benjamin's Retainer by Tavern Creates an Impermissible Conflict.

25. Tavern's payment of Benjamin's retainer to represent the Debtor in this case creates an impermissible conflict. "The existence of claims among multiple debtors (individuals or entities) is scrutinized closely as it relates to representation of multiple parties (creditors and debtors) in reorganization proceedings. A leading treatise notes that '[o]ne problem area that does influence courts to disqualify attorneys or deny their requests for compensation is the potential assertion of intercompany claims among the debtor entities.'" *In re Black & White Stripes, LLC*,

6

623 B.R. 34, 50 (Bankr. S.D.N.Y. 2020). "Multiple representations which may be tolerable in a commercial setting after full disclosure are not permissible in the bankruptcy setting. Upon the commencement of a chapter 11 proceeding, a debtor continues to operate its business pursuant to 1107 and 1108 of the Code, **but assumes fiduciary duties and obligations to all parties in interest** without fear or favor." *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1018 (Bankr. N.D. Ill. 1993) (emphasis added). "It is mandatory that Debtors' counsel be able to act in the best interests of the bankruptcy estate, free of any prior or ongoing commitments. Because of these limitations, a chapter 11 debtor does not have an absolute right to counsel of its choice." *Id.*

26. This case is not without precedent. In *In re Black & White Stripes* the US Trustee and creditors objected to employment of counsel for the debtor because, among other things, the firm had represented the debtor's members and avoidable transfer claims against those members were significant assets of the estate. *See id.* There, the court held:

> It is therefore imperative that there be no doubt whether counsel for the Debtors can effectively pursue any such actions. The [proposed counsel] argues that the viability of avoidance actions is merely speculative at this juncture. The evidence adduced by the Creditors so far hardly makes such claims speculative, but the [proposed counsel's] Retention Application is not the time or place to adjudicate such claims. Whether an avoidance action would ultimately succeed is not determinative of whether the Retention Application can be approved. ***The determining factor is whether counsel sought to be retained can proceed faithfully on behalf of the Debtors and in the best interests of the estate***.

*Id.* at 51 (emphasis added).

7

27. Here, as in that case, Tavern's claim against the Debtor and Benjamin is very real and the amount of that claim is over $16,000. Benjamin personally will likely be a defendant in any such action having received the funds and the Debtor could be co-defendant as being the intended beneficiary. *See* 11 U.S.C. § 550. But Benjamin also represents Tavern, who would be the plaintiff in any such suit (although it is now out of possession). Additionally, if Tavern decides to pursue the Debtor as beneficiary of the funds under §§ 544, 548, and 550, either by filing a claim or by seeking authority to pursue a suit directly, whether or not Benjamin returns the funds will directly impact the amount of Tavern's claim or its recovery rights against the Debtor dollar for dollar. This puts his interest in protecting his own pocketbook against imminent suit in conflict with his duty to protect the pocketbook of the estate.

28. Ultimately, as in *Black & White Stripes,* the claims against Benjamin and the Debtor are not speculative at all and that claim is over $16,000. While not huge it is also not insignificant. Benjamin represents an interest adverse to the estate and is not disinterested. The application must be denied.

**B. Perkin's Personal Guarantee of Benjamin's Fee Creates and Additional Conflict.**

29. Perkins' personal guarantee of Benjamin's fees creates another significant conflict. A guarantee puts the attorney in a conflict situation between the debtor and the guarantor. *See In re Tamojira, Inc.*, 210 B.R. 702, 706 (Bankr. E.D. Va. 1996). Any amount that the guarantor pays the debtor does not have to, and that frees up funds for the estate, and *vice versa*. These personal guarantees, coupled with the conflict created by the representation of both Tavern and the Debtor where Tavern

has picked up Benjamin's bill for both, show that this Court should not grant Benjamin's employment application. There are just too many conflicts to overlook.

### III. CONCLUSION

30. The City respectfully requests that this Court deny the application to employ Benjamin and his firm, Dkt. No. 54..

Dated: March 3, 2022                                    Respectfully submitted,

Celia Meza                                              **THE CITY OF CHICAGO**
Corporation Counsel
David Paul Holtkamp                                     Celia Meza
Chief Assistant Corporation Counsel                     Corporation Counsel
Chicago Department of Law
121 N. LaSalle St., Suite 400                           By: David Paul Holtkamp
Chicago, IL  60602                                      Chief Assistant Corporation Counsel
312-744-6967
david.holtkamp2@cityofchicago.org

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, hereby certify that on May 25, 2022, I served the below parties to this case, including the debtor and his attorneys, via CM/ECF to the addresses provided below.

- **Kimberly Bacher**  kimberly.bacher@usdoj.gov, kimberlyabacher@hotmail.com
- **J Kevin Benjamin**  attorneys@benjaminlaw.com, firmecf@gmail.com;benjaminlegalservicesllp@jubileebk.net;benjamin@ecf.courtdrive.com;r54940@notify.bestcase.com;benjaminkr54940@notify.bestcase.com;ecf123@casedriver.com
- **Jaime Dowell**  jaime.dowell@cityofchicago.org
- **David Paul Holtkamp**  david.holtkamp2@cityofchicago.org
- **Eugene S. Kraus**  ekraus@skcounsel.com
- **Patrick S Layng**  USTPRegion11.ES.ECF@usdoj.gov
- **Jason R. Sleezer**  jsleezer@skcounsel.com, rybarra@skcounsel.com

/s/ David Paul Holtkamp